All right, so the next item that we have on our docket is Ellis v. Henderson 5-25-0648. I know you're just getting comfortable, so if you need to get seated, Council for Appellant and Appellees. We'll give you a minute. All right, so Appellant, whenever you're ready, you may come forward and state your name and you may proceed then. Thank you, Your Honors. Good morning. Spencer Yaffe, Y-A-F-F-E, on behalf of the Appellant Plaintiff, Christina Ellis. As Your Honors are aware, on September 24th, 2021, my client was struck while walking down the road in the shoulder and proceeded to die twice and spend 42 days in the hospital. The issue before this court today is was there a sufficient factual dispute to preclude summary judgment? The trial judge, the trial court, who decided to sit as a juror while deciding summary judgment, got this matter wrong. The trial court concluded that Ms. Ellis, my client, was in the road when she was struck and that the defendant maintained her lane. These findings are factual findings of disputed facts. Okay, counsel, if I could interrupt. So I know that you're relying on the flip-flops being located on the shoulder after the accident, as well as debris from the vehicle off the roadway to support your argument here that this impact may very well have occurred outside of the plaintiff's lane of travel, or defendant's lane of travel. However, putting that aside, is there any other evidence in this record that the defendant moved out of her lane of travel at any point prior to the impact? Yes, Your Honor, there is. Okay, what is that evidence? First, we'll start with the plaintiff's statement moments after the crash. The plaintiff crawled or walked across the highway to a residence house who called 911. A responding officer arrived at that house moments later. The officer asked Ms. Ellis, what happened? Where were you? And Ms. Ellis said that she was walking on the far side of the road. The far side of the road, in this case, Your Honors, is the shoulder. Additionally, that same officer spoke with the defendant moments after the crash as well. And in deposition, the officer said, quote, and this is referring to the officer's conversation with the defendant, she thought she, that it looks like a person may be standing on the side of the road, end quote. Both parties, Ms. Ellis and the defendant, consistently say that Ms. Ellis was in the shoulder of the roadway, which is consistent with the location of Ms. Ellis' shoes and the body parts of the defendant's car strewn up the shoulder in the defendant's direction of travel. Counsel, your client was so drunk, the bartender cut her off, and she was high on meth, right? Yes, Your Honor, but that does not negate the defendant's duty to operate her motor vehicle in a reasonable manner. Well, I'm getting at, it's not that there's issues of fact, there had to be issues of genuine fact, right? Yes, Your Honor. All right. And the issues of genuine fact, the location of the flip-flops, the contemporaneous statements of both parties, indicating that Ms. Ellis was on the shoulder, are disputed fact. And in this case, the judge made conclusions of fact and drew these inferences, which should have been drawn in favor of Ms. Ellis, drew all reasonable inferences in favor of the defendant. Ms. Ellis had the absolute right to walk on the shoulder of the roadway. Counsel, I asked you about the evidence that you had pointed to here to show that the defendant's vehicle left the roadway, and you first discussed the plaintiff's statement made after the accident, correct? That's correct. How is that admissible, then, with respect to this pending motion for summary judgment? Because the plaintiff testified she had no memory of this accident, I believe, in her deposition. That was before the court. But how would some earlier statement by the plaintiff be properly considered by the trial court when offered by the plaintiff? Your Honor, it is absolutely admissible as a recorded recollection. It is a contemporaneous statement made immediately following the crash. The defendant should not benefit. Let me take a step back. It is not disputed that the plaintiff has mental issues, including but not limited to short-term memory loss. The defendant and those issues were caused by the defendant. The defendant should not be able to benefit a state liability because of her own negligence, because of the defendant's own negligence, which is what it would do. It would reward the defendant by excluding these statements. And they should not be excluded. I don't believe they would be excluded at trial either. Regardless, it is a question of fact for a jury. It robs the jury of a comparative fault analysis. Now with respect to your second piece of evidence, the defendant's statement made after the accident, that it looked like a person was standing on the shoulder. What page of the transcript was that? Defendant's establishment transcript. I did not see that. Was that a specific quote? That's in the officer's. In the officer's report? Yes. No, the officer's deposition, Your Honor. So the officer's testimony as to what he overheard the defendant say? No. Specifically in quotes? Pardon? Was this a quoted language? Yes, Your Honor. I believe it's page 14 of the officer's deposition. The officer calls the defendant. And that is the officer's quote. It's line 7 on page 14 of the deposition. Okay. May I proceed? You may. Thank you. Your Honors, the plaintiff, Ms. Ellis, was in her right to walk on the shoulder. 6.5 Illinois Code 5-11-1007B specifically says that pedestrians have the right to walk on the shoulder where a sidewalk is not available. It is also well established in Illinois law that a vehicle must maintain their lane of travel and cannot use the shoulder while traveling down a roadway. And that's under 11709 and 709.1a. The only way that Ms. Ellis is struck in this case is if the defendant left her lane of travel. And the trial court made a factual finding, which is a factual finding reserved exclusively for a jury, because these are genuine disputes of fact. What of the sole damage to the car driven by the defendant on the side, not the front? Your Honor, the damage to the defendant's vehicle moves from the front bumper, the corner of the front bumper, all the way down the side of her vehicle. Does that support the logical conclusion that your client was struck in the shoulder? It absolutely does support the conclusion that she was struck in the shoulder, Your Honor, that she was struck while walking on the shoulder, which would have required the defendant to deviate from her lane of travel, which exactly makes the plaintiff's point, the appellant's point in this case, that it is a disputed fact and an inference was drawn by the trial court in favor of the defendant to grant a summary judgment. Let's just assume that the defendant was hugging the very side of the pavement, the asphalt. Her mirror would have been sticking out, right? Potentially, Your Honor. However, it could have been in the shoulder, not the car, right? Your Honor, there's damage to the side of the car as well as the mirror. And the location of the defendant's vehicle and Ms. Ellis are questions of fact for the jury. Let's follow this hypothetical, Your Honor, that maybe Ms. Ellis was walking down the road. The defendant still owed her a duty to maintain a lookout. Any driver on any highway or byway in the state of Illinois is required to keep a lookout while operating the vehicle. If Ms. Ellis was, as you hypothesized, closer to the fault line, that still engages in comparative fault analysis. It's pitch black, raining, and your client had no reflective gear, right? That's correct, Your Honor. How did the defendant see her? The defendant? I mean, the defendant see her? How did the defendant even know she was there? Your Honor, Illinois law specifically contemplates a pedestrian walking on the side of the road. Let's take the example of hitting a deer. If somebody hits a deer driving on a country road, they know they hit a deer. That is because they're maintaining a reasonable lookout. Either the defendant was maintaining a reasonable lookout and saw her and is lying, or was not maintaining a reasonable lookout and therefore breached her duty. She cannot have it both ways. I think what we're grappling with here, counsel, and what I'm grappling with as well, is the case that appellees cited in their brief. And the quote was, where the evidence presented indicates only a mere possibility that the defendant was negligent, the case must be removed from the jury's consideration. Van Steenburgh v. General Aviation. How do you address that case? How do you contradict that? Because it is not mere speculation here, Your Honor. We have concrete evidence. We have the defendant's contemporary statements. We have the plaintiff's contemporary statements. We have Ms. Ellis' shoes in the shoulder. We have the vehicle's parts in the shoulder. The flip-flops are found in the debris field with the rest of the vehicle. Counsel, I'm still trying to find the statement purportedly made by the defendant to the police officer. And I'm looking at the deposition transcript here of Officer, is it Aikman? Aikman, yes, Your Honor. I thought you said page 14, line 7. Maybe I misheard you. I have my notebook, Your Honor, so I can double-check. I think this is pretty critical that we make sure we understand exactly what was said. Absolutely. Yes, Your Honor. It is page 14, line 7 of that deposition transcript. Officer, are you looking at the condensed version? Yes, I am. So it's deposition page 14, not PDF page 14. Okay. So the question was, what, if anything, do you remember from that conversation? Answer, I remember asking her about, you know, what happened. She recalled that she had hit something, but she wasn't sure what it was. But when I asked her, now that ends line 7, then it goes on. She thought that it looked like a person maybe standing on the side of the road, like when she heard it hit, she said that she looked over and she thought that she saw a person standing there. And then she continued to Casey's to call the officer. Now, later on in the deposition, the officer said and answered a question that in his report, he did not include anything that would indicate that the defendant ever left her lane of travel. And that was on page 29. The question was, and your report indicates that my client was in her lane of travel at all times. Is that based on your conversation with her? Answer, yes. So how do you derive from that that this is some type of admission by the defendant that can be used against her creating this genuine issue of material fact? Your Honor, it is an admission that does create a material dispute of fact when viewed in the totality with all the other pieces of evidence. Between the defendant stating that and the plaintiff stating, they both consistently say she's on the far side of the road, she's on the shoulder of the road. The defendant, as Your Honors have seen in many trials, defendants can make self-serving statements. But the officer didn't take it that way. He had the conversation in his report. He indicated clearly that the defendant was in her lane of travel. So when you look at the earlier statement you referenced, it may be construed as the defendant saying, well, I may have seen somebody standing on the side of the roadway as I'm approaching. Then I hear and feel an impact. It could have been that person stumbled into the roadway, could it not? Isn't that equally plausible? Your Honor, I would argue that no, the evidence does not show that. The evidence shows that the plaintiff was struck while in the shoulder of the roadway. And just to flesh that out, because I understand you all are having issues with the argument of the location of the flip-flops being the location of the crash. Your Honors, if I am standing here and I'm struck by a vehicle wearing flip-flops, my shoes are going to stay where I was hit. That's speculation, is it not? I mean, there's no accident reconstructionists involved here. If somebody's struck by a vehicle going 60-some miles an hour, how do we draw to reach a conclusion that the flip-flops would have remained perfectly where they were at the time of impact? Your Honor, the only other inferences to be drawn, which were raised by the trial court and defense, were that the flip-flops were removed seconds before the crash, which would put my client, Ms. Ellis, in the shoulder, or that they were removed immediately following the crash to mark her location or something. I wasn't totally sure where that argument was going. Could it have flown off there? Could they not have? With the impact, when she's being struck by a vehicle at high speed, it could have just flown off into the side of the shoulder of the roadway. Could it not have? No, Your Honor. Given where the debris was, I would argue that she was quite literally launched from her shoes, and the debris field followed the shoes in the shoulder of the roadway, which is where the defendant struck my client. And the defendant even testified in her deposition that when asked whether or not she was on her phone, she said, I don't know. And there are so many jury questions that were left unanswered. Whether the defendant exercised reasonable care. Was the defendant distracted while driving? Did the defendant have a chance to avoid any kind of collision? Was she maintaining a proper lookout? Was the defendant in her lane of travel, or did she lead it? Was Ms. Ellis on the shoulder? And while sitting as a juror, Your Honors, the trial court determined, despite the plethora of disputed facts, that the defendant exercised reasonable care. And it is impossible to decide this under these facts. I ask that you reverse and revamp this matter. Thank you. You'll have time to revamp. Thank you, Your Honor. All right, counsel. If you're ready. If you would, please come forward and state your name. Good morning, Your Honors. Tiffany Byrne, B-Y-R-N-E, on behalf of the appellee defendant, Robin Henderson. May it please the Court and the counsels. Based on the undisputed material record in this case, including my client's unrebutted testimony, as the only eyewitness who can testify to the facts of this incident, as a matter of law, there was no duty owed. The plaintiff failed to present any evidence of breach, and the plaintiff was 51% interpretatively negligent as a matter of law. Starting with the issue of duty, duty comes down to really what should a reasonably prudent person anticipate. Specifically, should a driver traveling entirely within their lane, maintaining a speed limit at highway speeds, the speed limit in this particular area was 65 miles per hour, while driving outside of town on a country road in the rain, with no pole lights on a divided highway, while looking ahead where her headlights were illuminated and her windshield wipers were on, should that person anticipate that an intoxicated pedestrian is going to be out there in the roadway. Specifically, for a pedestrian who is not wearing any reflective gear and making no effort to make themselves visible to vehicles traveling on this highway. A reasonably prudent person should not anticipate that. And duty really comes down to the specific facts of the case. Foreseeability is an integral factor in the duty analysis, and under these facts, it was simply not foreseeable. We are asking the court to decide the parameters of when a duty may be owed in other cases, but talking about this case specifically, it's very obvious that this was not foreseeable, and my client, the defendant, did not know any duty to this pedestrian. Counsel, could you address the argument that was made by opposing counsel here that a genuine issue of material fact is created based on the plaintiff's post-accident statement that she was walking on the far side of the shoulder and that that would be admissible as a recorded recollection? Yes, Your Honor. So the plaintiff on body cam shortly after the incident, the officer had asked, which side were you walking down? All she said was the far side. That doesn't say whether she was on the far side of the road, in the shoulder, on the grass, even further over on the shoulder. That doesn't indicate at all what part of the roadway, whether on or off the roadway, she was traveling on. Also while we're on the topic, the argument that the defendant had testified that it looked like a person standing on the side of the roadway, any argument or any testimony, I apologize, that the defendant saw a person was only after the impact. The defendant has maintained in her deposition testimony as well as the officer even confirmed that she did not see the plaintiff prior to an impact at the side of her vehicle. What she's maintained is that she was traveling down the roadway, she heard an impact with the passenger side of her vehicle, and when she looked over, she saw what might be a person. She's never confirmed that she did see a person. She's always maintained she didn't know what she struck. Whether or not it looked like a person doesn't create a material fact. And again, this was all post-impact of where the plaintiff may have been after the impact. That doesn't at all place the plaintiff in the roadway on the shoulder, or I apologize, on the shoulder prior to the impact. The officer did testify in his deposition that he did not think the plaintiff or the defendant saw the plaintiff prior to the impact. So any of those statements, again, are post-impact and do not place the plaintiff on the shoulder prior to the accident. Again, with regards to duty, foreseeability is what is objectively reasonable to expect, and it wasn't reasonable to expect that an intoxicated pedestrian wearing no reflective gear would be on the roadway at this time. The next issue is whether or not the defendant breached her duty of care if there was a duty. The allegations in the complaint are that the defendant failed to exercise ordinary care, keep a proper lookout, maintain control of her vehicle, and yield to the plaintiff. As the trial court properly reasoned, the plaintiff did not present any evidence or testimony to hang their hat on as to meet the burden of proof that an impact occurred anywhere other than the lane of travel. The defendant testified in her deposition that she is a 6-year-old woman traveling alone. Again, this was an unlit 65-mile per hour highway. It was raining. It was dark. It was approaching midnight. Instead of stopping immediately, which would have been dangerous, she traveled to the nearest lit area to assess the damage and to contact the police officers. As the trial court properly pointed out, the flip-flops on the side of the roadway have no value. In arguing that the flip-flops would have stayed in the exact position that the plaintiff's feet were planted is akin to applying cartoon physics to a real-life situation and passing it off as evidence. Here, there is no evidence or testimony that the plaintiff was even wearing the flip-flops when the accident occurred. It's equally as possible that the bartender testified that her walk was off in his deposition. It's equally as likely that the plaintiff had stumbled out of the flip-flops prior to the accident, that the flip-flops stayed on and she had taken them off after the accident. It's also equally as likely that the flip-flops could have flown in any which direction after the accident. There's simply no competent evidence that those flip-flops mark the point of impact. The plaintiff also relies on the defendant's testimony, essentially attempting to place false doubt into the court's mind by arguing that the deposition and the body cam footage are different or inconsistent. As I discussed earlier, all of those statements regarding what she saw was what she saw after the impact. It's immaterial and it doesn't address the allegations in the complaint. There, she wasn't changing her story. She was talking about two different things. Again, the defendant has always maintained that she maintained her lane, maintained an appropriate speed limit, her headlights were illuminated, her windshield wipers were operating properly, and she was looking ahead. When she heard an impact to the side of her vehicle. Additionally, the impact to the vehicle, the officer's testimony indicates that the impact was from the rear view, the passenger side rear view mirror and back. He confirmed that in his deposition. There wasn't any damage in the record to the passenger front bumper. And again, the defendant testified that the damage was to the side of her vehicle and she heard an impact with the side of her vehicle. Any evidence that the plaintiff breached her duty of care would be on this record based on pure speculation, which is not enough to dispute any of the material facts here. Another issue that I wanted to point out, visibility was low. In this area, and that was confirmed by the responding officer who had traveled the same direction as the defendant on the same highway moments prior to the accident. And lastly, as a matter of law, the plaintiff here was 51% at fault for her own injuries. We cited several cases in our brief in which the appellate courts have affirmed summary judgment based on causation alone. Here, there is no dispute on the material record. The officer confirmed that he believed the plaintiff was at fault for this accident in his deposition, as well as, I've already went over the facts. The court's very familiar with the facts. The evidence here is overwhelming that the plaintiff was the sole approximate cause of her own injuries. And for those reasons, this court should affirm the summary judgment. Any further questions? All right. Thank you, counsel. Thank you, Your Honors. All right. Rebuttal. Thank you, Your Honor. Your Honors, first to address the post-impact conduct, which was a line of questions that Your Honors had. As we are aware, the defendant did not stop. She proceeded 1.3 miles down the road to a gas station. What did she do during that time, 1.3 miles? Did she call 911? No, she calls her daughter to ask if they know someone on the police who can come and meet her. And I'm citing C-722 in the packet. Well, she testified she didn't know if she'd get a person. Why would she call 911 if she didn't know what she had? Your Honor, she now argues in her brief that it's because she's from Georgia and did not know if 911 worked in Illinois. In this case, I would argue that it is a question for the jury as to the consciousness of guilt of the defendant as she is proceeding away from this scene where she was not paying attention, potentially on her phone, and potentially just struck a person, which brings us to the question of foreseeability, which is heavy on the trial court's mind and on defense's mind. We do not get to the question of foreseeability without the finding of fact that the plaintiff was in the roadway. The plaintiff is only unforeseeable if she is undisputed in the roadway. Every single case cited in the briefs, being the Royer and Luman cases, the plaintiff was undisputed in the middle of the roadway, and the driver was paying attention. Those are questions of fact which the jury was not allowed to address in this case. Let me ask you, counsel. Counsel, when I asked about the statement the plaintiff made after the accident that you referenced, that the plaintiff said, I was walking on the far side of the shoulder, counsel said that is not accurate. The statement was that she was walking on the far side, generally. What was the actual statement? Your Honor, that's my mistake for not correcting your understanding in my initial argument. She does say I was walking on the far side, which I argue is the shoulder of the roadway, which is where the debris field is, which is where the flip-flops are. And if the flip-flops were taken off after the crash and then placed there, then that's tantamount to testimony. If they were taken off before the crash, Your Honor, then I ask why is it in the debris field with all of the other vehicle parts from the defendant's vehicle? And even if she were, the defendant was, drifting on the fault line and struck Miss Ellis with her vehicle, then she was not maintaining control of her vehicle, which is required by Illinois law. The defense conjectures that she was maintaining her lane. And Your Honor is bringing up, well, maybe she wasn't. So maybe she was teasing the fault line, which involves a comparative fault analysis by a jury, which was not allowed to happen here. Briefing notes. Your Honor, at the end of the day, the far side is the far side. Everybody is consistent with where they, the plaintiff and defendant, I should say, are consistent with where Miss Ellis was. She was on the far side of the road. That is within the debris field where the plaintiff's shoes were found. These are questions of fact. And the trial court, sitting as a juror, reviewed these questions of fact, addressed these questions of fact, and then made conclusively leads while drawing these inferences in favor of the defense instead of in favor of Miss Ellis, and dismissed this case. I ask again that you reverse and remand this matter and set for trial. And unless there are any other questions, I thank this court for their time.